UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY A. KENNESON )<br>    *Plaintiff*, )<br>)<br>v. )<br>)<br>DONALD PARKER, ROBERT )<br>MILSLAGLE, and JAMES DANIELS, )<br>    *Defendants*. )<br>)<br>)<br>) | 3:20-CV-988 (OAW) |

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the court upon Defendants' Motion for Summary Judgment and memorandum in support thereof ("Motion"). *See* ECF Nos. 27, 27-2. The court has reviewed the Motion, Defendants' Statement of Facts ("Defendants' SOF"), *see* ECF No. 27-1, Plaintiff's Memorandum in Opposition to the Motion, *see* ECF No. 28, Plaintiff's Statement of Facts ("Plaintiff's SOF"), *see* ECF No. 28-1, Defendants' Reply in support of the Motion, *see* ECF No. 29, Defendant's Notice of Supplemental Authority, *see* ECF No. 31, all supporting exhibits, and the record in this matter and is thoroughly advised in the premises. For the reasons discussed herein, the Motion is **GRANTED.**

### I. BACKGROUND

Most of the facts in this case are not in dispute. Plaintiff Kimberly Kenneson is a private investigator. ECF No. 27-1 at ¶ 1, ECF No. 28-1 at ¶ A.1. In 2016, an investigation took her to the University of New Haven ("UNH").[1] ECF No. 27-1 at ¶ 3, ECF No. 28-1 at

---

[1] Plaintiff was investigating an alleged sexual assault that occurred on the UNH campus and that involved UNH students. ECF No. 28-1 at ¶¶ B.1-2, 26.

¶ A.3.  During that investigation, she was invited to one of the dormitories (Forest Hills) by students who lived there.[2]  ECF No. 28-1 at ¶ B.29.

Plaintiff conducted interviews with several students at Forest Hills and then went with some Forest Hills residents to another dormitory, West Side Hall.  ECF No. 27-1 at ¶¶ 9-10, ECF No. 28-1 at ¶¶ A.9-10.  Once there, a West Side Hall resident signed in the Forest Hills students with a resident advisor ("RA").  ECF No. 27-1 at ¶¶ 18, ECF No. 28-1 at ¶¶ A.18.  The Forest Hills residents informed the West Side Hall RA that Plaintiff was with them (the students from another dormitory) and conceded that Plaintiff *was not* there as a guest of the student who resided at (and who was signing visitors into) that particular dormitory.  ECF NO. 27-1 at ¶ 27; ECF No. 28-1 at ¶ A.27.  In fact, while the West Side resident was authorizing entry as to the Forest Hills residents, Plaintiff (the non-student who was then around fifty years old, ECF No. 28-3 at 12:17, and who knew that the students were supposed to sign her in as their guest, ECF No. 27-1 at ¶ 19, ECF No. 28-1 at ¶ A.19), stood away from the students who properly were signing in with the RA and instead walked to the elevators before the RA could ask where she had gone.  ECF No. 27-1 at ¶ 20–25, ECF No. 28-1 at ¶ A.20–25.  This manner of apparently unauthorized entry caused enough concern that the RA called a supervisor, and then campus police. ECF No. 27-1 at 24; ECF No. 28-1 at A.24, ECF No. 27-8.  University of New Haven Police Department ("UNHPD") Officer Michael Novella and Sergeant James Daniels ("Defendant Daniels") responded, ECF No. 27-1 at ¶ 25, ECF No. 28-1 at ¶ A.25, around

---

[2] Defendants' SOF never affirms that Plaintiff was invited to the UNH campus or to the dormitory.  In fact, it suggests the opposite, stating that "Plaintiff did not personally receive permission to enter UNH's campus *from any UNH employee, administrator, or police officer*."  ECF No. 27-1 at ¶ 5 (emphasis added).  However, Defendants never deny that Plaintiff was invited to the campus, and even accept that fact in some of their arguments.  The court therefore finds that there is no genuine dispute as to this fact. Even if there were, the court would be bound to accept Plaintiff's account of events as true at this summary judgment stage.

9:30 P.M., ECF No. 27-8 at 2.  The officers found Plaintiff on the third floor of West Side Hall.  ECF No. 27-1 at ¶ 28, ECF No. 28-1 at ¶ A.28.  They asked for her identification, which she provided, and informed her that she had failed to sign in and was trespassing.  ECF No. 27-1 at ¶¶ 29-30, ECF No. 28-1 at ¶¶ A.29-30.  Plaintiff asserts that she informed them she did not know of any sign-in policy.  ECF No. 28-1 at ¶ B.34.  She also asserts that she tried to show them a text message that she said would prove that she had been there by invitation, but that they refused to listen.  *Id.* at ¶ B.32, ECF No. 28-3 at 50:19–20.  However, the court reiterates that this approximately fifty-year-old non-student also testified during her deposition and concedes through the parties' statements of fact that she knew UNH students were supposed to sign in campus visitors.  ECF No. 27-1 at ¶ 19, ECF No. 28-1 at ¶ A.19.  She also concedes that she did not so sign in.  *See* ECF No. 27-1 at ¶ 17, ECF No. 28-1 at ¶ A.17.

At the officers' instruction, Plaintiff left the building, and the officers issued her a trespass warning.  ECF No. 27-1 at ¶¶ 31-32, ECF No. 28-1 at ¶¶ A.31-32.  The next day, a UNH student went to campus police and reported to Sergeant Robert Milslagle ("Defendant Milslagle") that he had been asked the day before to meet with a private investigator in the Forest Hills dormitory.  ECF No. 27-1 at ¶¶ 33-34, ECF No. 28-1 at ¶¶ A.33-34.  Defendant Milslagle showed the student a picture of Plaintiff, and the student identified her as the person with whom he had spoken.  ECF No. 27-1 at ¶ 37, ECF No. 28-1 at ¶ A.37.

On March 1, 2016, Sgt. Daniels submitted an arrest warrant, ECF No. 27-4, applying to charge Plaintiff with Criminal Trespass in the Third Degree, but he also penned a supplemental report in which he explained that he was ordered by Assistant

Chief Parker to submit the warrant despite Defendant Daniels previously having issued Plaintiff a trespass warning related to the same incident, ECF No. 27-19.  The order to submit the warrant was based on additional information that had come to light upon continued investigation, but Defendant Daniels conceded in his supplemental report that students either had invited Plaintiff onto the UNH *campus* or had "assisted her in gaining access to" its dormitories.  *Id.* at 2.  Defendant Milslagle reviewed the affidavit Defendant Daniels drafted in support of the application ("Daniels Affidavit"), ECF No. 27-1 at ¶ 40, ECF No. 28-1 at ¶¶ A.40, and Judge Denise Markle signed the arrest warrant.  ECF No. 27-1 at ¶ 42, ECF No. 28-1 at ¶¶ A.42.

The arrest warrant was executed in November 2016; Plaintiff was transported to the West Haven Police Department, where she was booked, processed, and released on a promise to appear in court.  ECF No. 27-1 at ¶ 43, ECF No. 28-1 at ¶¶ A.43, B.5.  On April 19, 2018, the prosecutor reduced Plaintiff's charge from criminal trespass to simple trespass (an infraction for which the maximum penalty was a monetary fine).  ECF No. 27-1 at ¶ 44–45, ECF No. 28-1 at ¶¶ A.44–A.45.  Plaintiff went to trial on this reduced charge two weeks thereafter.  ECF No. 27-1 at ¶ 44, ECF No. 28-1 at ¶¶ A.44, B.6–B.7.

On May 2, 2018, Plaintiff stood trial and the judge dismissed the case, finding that there was no evidence Plaintiff knew she was not privileged to be on the UNH campus.  ECF No. 27-1 at ¶¶ 46-47, ECF No. 28-1 at ¶¶ A.46-47, B.21-22.

Plaintiff initiated the instant action against Defendants on July 16, 2020, asserting a claim of malicious prosecution.  ECF No. 1.

## II.  LEGAL STANDARD

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  The movant bears the burden of demonstrating that there is no genuine issue of material fact. *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *McCarthy v. Am. Int'l Grp., Inc.*, 283 F.3d 121, 124 (2d Cir. 2002) (quoting *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1535 (2d Cir.1997)).  If "there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Id.*

To defeat a summary judgment motion, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998).  Rather, the nonmoving party must point to "specific facts in dispute to show that there is a *genuine issue for trial*." *Matsushita,* 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).  If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," then summary judgment may still be granted.  *Horror Inc. v. Miller*, 15 F.4th 232, 240–41 (2d Cir. 2021).

While the nonmoving party ultimately will bear the burden of persuasion at trial, the moving party may show that summary judgment is appropriate in two ways: (1) by

submitting evidence that negates an essential element of the opposing party's claim, or (2) by demonstrating that the opposing party's evidence is insufficient to establish an essential element of their claim.  *Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988).

When reviewing a summary judgment motion, the court construes the cited evidence in the light most favorable to the nonmoving party and "resolves all ambiguities and draws all reasonable inferences against the moving party."  *Horror*, 15 F.4th at 240.

## III.   DISCUSSION

The parties' statements of fact show that there are no material facts in dispute.  The question, then, is whether Defendants are entitled to judgment as a matter of law.

In order to prevail on a claim for malicious prosecution, a party must show the following: "(1) the defendant initiated or continued criminal proceedings against the plaintiff; (2) the criminal proceeding terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice."  *LaPaglia v. Reilly*, No. 3:16-CV-01512 (JAM), 2017 WL 6614254, at *2 (D. Conn. Dec. 27, 2017) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009)).  Defendants do not dispute that the criminal proceeding terminated in Plaintiff's favor.  Defendants contend she has failed to show every other element, though, and they also argue that they are entitled to qualified immunity.

### a.   Defendants initiated criminal proceedings against Plaintiff.

Defendants first argue, unconvincingly, that they did not initiate a criminal proceeding against Plaintiff because Plaintiff only was tried on an infraction, and that an

infraction cannot be the basis for a malicious prosecution claim. They assert that the substituted charge is the only relevant charge.

The court disagrees. In the first instance, Defendants have provided no binding, or even convincing, authority for this proposition. The only case they cite from this Circuit dealt with a separate issue and different facts. In *Cafasso v. Nappe*, No. 3:15-CV-920 (MPS), 2017 WL 4167746 (D. Conn. Sept. 20, 2017), the plaintiff filed a lawsuit alleging malicious prosecution against the officer who had applied for the plaintiff's arrest warrant, but said plaintiff filed suit after first resolving that criminal case by way of a guilty plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970) (the "*Alford* doctrine"). In *Cafasso*, however, while the defendant officer had applied for an arrest warrant charging at least one felony count, the state prosecutor amended the application *before the application was presented to the reviewing judge* so as to charge only a misdemeanor. Defendants have excised some language out of context which they assert supports their position, but the issue before the *Cafasso* court (*Hon. Michael P. Shea, J.*) was whether the officer had probable cause to support the misdemeanor charge; His Honor never addressed whether a criminal action had been initiated. Moreover, Judge Shea clarified that when he said that the plaintiff "must show there was a lack of probable cause to support the charge for which he was actually haled into court," he meant that, "[p]ut differently, Officer Nappe's initial application to charge Mr. Cafasso with a felony caused Mr. Cafasso no harm, because the State *bought only the misdemeanor charge*." *Cafasso*, 2017 WL 4167746, at *4 (emphasis added). Here, though, the state did bring the criminal trespass charge; Plaintiff was arrested, booked, and processed for criminal trespass. The instant case therefore is clearly distinct from *Cafasso*. Moreover, however, Judge Shea

noted in *Cafasso* that his "inquiry beg[an] with a presumption of probable cause because a judge signed *the arrest warrant that initiated the prosecution*." *Id.* (emphasis added). Defendants' own citation therefore supports the argument that criminal proceedings were initiated with the signing of Plaintiff's arrest warrant, and since Plaintiff's arrest warrant was issued for criminal trespass, criminal proceedings did initiate against Plaintiff.

Defendants' reliance upon an Eighth Circuit case, *Rodgers v. Knight*, 781 F.3d 932 (8th Cir. 2015), for the proposition that Plaintiff must show injury in order to proceed on her claim also is misplaced. In that case, the Eighth Circuit's reference to an injury arose from Missouri malicious prosecution law which, unlike Connecticut's, required a showing that a plaintiff was damaged in some way. However, as Defendants point out, Connecticut law controls here. Thus, neither case cited by Defendants provides support for their argument.

The court's own research reveals that a criminal proceeding can be "initiated" for purposes of a malicious prosecution claim by an action as slight as misrepresenting information to law enforcement. *See Lombardi v. Myers*, No. 3:14-CV-1687 (VAB), 2016 WL 4445939, at *3 (D. Conn. Aug. 18, 2016) ("A private person may also be found to have initiated the case if he provided false information to the police.") (citing *Bhatia v. Debek*, 287 Conn. 397, 407 (2008)). Therefore, it is of no moment that Plaintiff was tried only on an infraction, because "initiated" does not mean "tried." Here, the initiation element easily is satisfied because Defendants applied for and acted upon a warrant which led to Plaintiff's being arrested, booked, processed, and summonsed to court on a charge of criminal trespass. Thus, Defendants' first argument fails.[3]

---

[3] The court also notes that, under Defendants' argument, law enforcement hypothetically could harass an individual they know to be innocent of wrongdoing by submitting false affidavits to support spurious

**b. There was probable cause to justify Plaintiff's criminal trespass arrest.**

Next, Defendants argue that they acted with probable cause, which is a complete defense to a malicious prosecution claim. "Probable cause exists when, based on the totality of circumstances, [an] officer has 'knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" *Finigan v. Marshall*, 574 F.3d 57, 62 (2d Cir. 2009) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir.2007)). As Defendants note in their summary judgment memorandum of law, the Supreme Court of the United States has held that meeting the probable cause standard "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Westby*, 138 S. Ct. 577, 586 (2018) (citing *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). The High Court went on to explain, "Probable cause is not a high bar. *Id.* (citing *Kaley v. United States*, 571 U.S. 320, 338 (2014) (internal quotations omitted)).

Section 53a-109 of the General Statutes of Connecticut states in relevant part, "(a) A person is guilty of criminal trespass in the third degree when, knowing that such person is not licensed or privileged to do so: (1) Such person enters or remains in premises which are posted in a manner prescribed by law or otherwise enclosed in a manner designed to exclude intruders. . . ."

Defendants first argue there was probable cause to believe Plaintiff committed a criminal trespass because Plaintiff entered buildings that: bore clear indicia of being

---

charges against that individual, arresting them, and conceivably even incarcerating them, and yet that individual still would not be able to state a claim for malicious prosecution provided the government dropped the charges before trial. The court is discomfited by this notion and posits that such a conclusion would be antithetical to several of this country's foundational maxims.

private property, and that had locked doors, duty desks, and sign-in procedures, and also because Plaintiff accessed the campus by passing a guard shack that had signage warning entrants: "Private Property," "No Trespassing," "No Soliciting," "No Loitering," and "Violators Will Be Prosecuted."  Second, Defendants assert that probable cause is presumed where, as here, the arrest warrant was signed by a neutral judge.

As to the first argument, the measures taken by UNH adequately place visitors on notice of the need to have valid permission to be on campus, and in order to enter their locked dormitories.  To the extent Plaintiff argues and the record suggests that Plaintiff might have had permission to be on *campus*, she also concedes under oath and through the parties' statements of fact that she knew UNH students were supposed to sign in campus visitors, ECF No. 27-1 at ¶ 19, ECF No. 28-1 at ¶ A.19, and she was *not* signed into West Side Hall.  Instead, her actions in observing from a distance the sign-in process that she acknowledged (and appeared to avoid), give rise to probable cause that she knowingly entered the elevator purposely to avoid the RA inquiring as to her identity or intentions.  The record lacks any evidence that Plaintiff had permission from any authorized individual to enter West Side Hall.  Even if Forest Hills residents invited her on campus, and even if they wished that she be allowed to enter West Side Hall, evidence of the sign-in process makes clear that the Forest Hills residents lacked authority or standing to sign in Plaintiff or to grant her valid access to the West Side dormitory. Further, it would defy logic for anyone to believe that fellow UNH students would be required to sign into a locked residence hall, but that a non-student would be immune from such a policy and would be free to roam its halls without permission and verification.

Finally, it would be insufficient in avoiding probable cause to persuasively argue that, once inside the dorm, West Side residents granted Plaintiff permission to stay there, because the criminal trespass statute outlaws unlawful *entry*; it is illegal to *enter* or remain without license or privilege to do so.  *See* Conn. Gen. Stat. § 53a-109.  Under the totality of these circumstances, the court finds (as did the judge reviewing the warrant for Plaintiff's arrest) that probable cause was established to believe that Plaintiff unlawfully entered West Side Hall.  To the extent that "[a] plaintiff claiming malicious prosecution has the burden of proving the absence of probable cause", *Kenneson v. Vacarelli*, No. 3:20-CV-01482 (JBA), 2022 WL 2527972 at *4 (D. Conn. July 7, 2022), Plaintiff here cannot meet that burden.  For that reason, summary judgment must be **GRANTED.**

Defendants correctly assert that probable cause is presumed where a neutral and detached magistrate has issued an arrest warrant, as is the case here.  *Chase v. Nodine's Smokehouse, Inc.*, 360 F. Supp. 3d 98, 112 (D. Conn. 2019) ("When an arrest is made pursuant to a warrant issued by a neutral magistrate, probable cause is presumed.") (citing *Walczyk v. Rio*, 496 F.3d 139, 155-56 (2d Cir. 2007)).  But Plaintiff may rebut this presumption by showing that Defendants knowingly and intentionally, or with reckless disregard for the truth, made a false statement in their application for her arrest warrant, or that they omitted material information, and that the false or omitted information was necessary to the neutral judge's finding of probable cause.  *Id.* at 113 (quoting *Soares v. Conn.* 8 F.3d 917, 920 (2d Cir. 1993)).

In the instant case, Plaintiff's arguments attempting to rebut probable cause also relate to her claims of the defendants' malice in suggesting that Defendant Daniels

11

omitted facts material to the reviewing judge's determination on probable cause. As such, the court will analyze these claims within the context of such review.

### c. There is insufficient evidence from which a jury could find malice.

To evince that Defendants acted with malice, Plaintiff must show that they acted primarily for a purpose other than bringing an offender to justice. *Woodhouse v. Ridley*, No. 308CV1260CSH, 2010 WL 1279068, at *5 (D. Conn. Mar. 29, 2010). Lack of probable cause can give rise to an inference of malice because it "tends to show that the accuser did not believe in the guilt of the accused." *Stearns v. Barylski*, No. 3:14-CV-194 SRU, 2015 WL 4603428, at *2 (D. Conn. July 30, 2015). Here, Plaintiff alleges that Sergeant Daniels only drafted the warrant application for Plaintiff's arrest because he was ordered to do so, but Plaintiff goes on to argue that Defendants Daniels and Milslagle "intentionally omitted exculpatory facts…which made the difference between issuing the warrant and refusing to issue it." ECF No. 28 at 5. To the contrary, Sergeant Daniels's supplemental report explains that UNH students "invited [Plaintiff] to *the University*," and "assisted her in gaining access" to the dormitories. ECF No. 28 at 2 (emphasis added). This is far from Defendant Daniels explaining that students with the appropriate authority granted or approved Plaintiff's <u>entry</u> into <u>West Side Hall</u>. A crowbar can assist in gaining access to a closed bank, but such assisted access hardly equates to permissible entry. Similarly, a bank manager might invite a prospective customer into her office without authorizing entrance into the bank's vault. The information in the supplemental police report (a discoverable document in Plaintiff's criminal prosecution) contained mitigating information as to the extent of Plaintiff's culpability, but it did not negate probable cause

or establish an illegitimate purpose for pursing the arrest. Thus, Plaintiff's malice arguments are unavailing.

Facilitating access to a secured area is not the same as validly granting access. For example, a court employee can see a stranger approaching as they enter the courthouse and allow a secured door to close just slowly enough that the stranger might catch it and gain access to the building. In that instance, the court employee has not authorized entry, but certainly has facilitated potentially unauthorized access without proper scrutiny. As such, the stranger might well be subject to prosecution for unauthorized entry despite the actions of the court employee.

In the present case, even if UNH students invited Plaintiff onto campus, that does not mean that they validly permitted Plaintiff access to all secured buildings and areas on that campus; also, *facilitating access* to a dormitory is not the same as *authorizing entry* through proper means and in compliance with security protocols.

In arguing that Sergeant Daniels "only" drafted the warrant because he was ordered to do so, Plaintiff also alleges malice by suggesting that Defendant Daniels knowingly submitted a warrant that, through factual omissions, lacked probable cause. However, the record is clear that Sergeant Daniels did not think there was insufficient cause to justify Plaintiff's arrest. Indeed, the reviewing judge found probable cause and signed the arrest warrant. Furthermore, at his deposition, Defendant Daniels testified under oath that he believed he had probable cause to support Plaintiff's arrest, and also that he would not have drafted such a warrant otherwise. ECF 28-2 at 20–21. He testified that the students who invited Plaintiff to campus did not follow proper procedures to authorize Plaintiff's entry into the dormitory where she was arrested. *Id.* at 21. The record

leaves no genuine issue of material fact on the issue of malice.  Accordingly, a reasonable jury cannot find that Defendants acted with malice, and therefore, as a matter of law, Plaintiff's claim of malicious prosecution must fail.  As a consequence, Defendants' summary judgment motion is **GRANTED.**

### d. Defendants are entitled to qualified immunity.

"When a defendant invokes qualified immunity to support a motion for summary judgment, courts engage in a two-part inquiry: whether the facts shown 'make out a violation of a constitutional right,' and 'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'"  *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010), (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The facts clearly satisfy the first step of this inquiry; to arrest someone without probable cause is a clear violation of an individual's constitutional rights.  *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) ("The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right.").  Still, "[a]n arresting officer is entitled to qualified immunity from a suit for damages on a claim for arrest without probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  *Id.*  "Arguable probable cause," as it has come to be known, triggers qualified immunity protections.  *McColley v. Cty. of Rensselaer*, 740 F.3d 817, 825 (2d Cir. 2014).  The court already has determined that probable cause existed to justify Plaintiff's arrest.  Therefore, qualified immunity attaches because the court finds it was objectively reasonable for Defendants to believe that probable cause existed.  As such, summary judgment must be **GRANTED.**

### e. Defendants have established governmental immunity.

Finally, Defendants assert that they also are entitled to governmental immunity. Governmental immunity generally shields municipal officers from suit for actions which they undertake in the discretionary function of their municipal office. *Chipperini v. Crandall*, 253 F. Supp. 2d 301, 311 (D. Conn. Mar. 26, 2003). Defendants correctly point out that the doctrine is applicable to law enforcement officers, and that seeking an arrest warrant is a discretionary act. *Id.* There are exceptions to the doctrine, however, and it does not apply "where the alleged acts involve malice, wantonness[,] or intent to injure, rather than negligence." *Id.* at 312. "Malice," in the context of governmental immunity, is "highly unreasonable conduct" that "indicates a reckless disregard of the just rights . . . of others." *Silberstein v. 54 Hillcrest Park*, No. CV075004549S, 2010 WL 4886235, at *6 (Conn. Super. Ct. Nov. 5, 2010), aff'd sub nom. *Silberstein v. 54 Hillcrest Park Assocs., LLC*, 135 Conn. App. 262, 41 A.3d 1147 (2012) (quoting *Elliot v. Waterbury*, 245 Conn. 385, 415, 715 A.2d 27 (1998)) (internal quotation marks omitted). Here, the record evidence indicates that Defendants sought a warrant for Plaintiff's arrest as supported by probable cause, and without malice. Defendants are shielded by governmental immunity, thus the motion for summary judgment must be **GRANTED.**

## IV. CONCLUSION

Accordingly, it is thereupon **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment is **GRANTED.**
2. The Clerk of Court is asked, respectfully, to enter judgment in Defendants' favor and close this case.

**IT IS SO ORDERED** at Hartford, Connecticut, this 23rd day of September, 2022.


                                                                                                                    _/s/_

                                              OMAR A. WILLIAMS
                                              UNITED STATES DISTRICT JUDGE